# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth Transportation
Comm'r of Virginia

v.

Ourisman Dodge, Inc., et al.

August 2, 2007

Case No. (Law) 211144

BY JUDGE R. TERRENCE NEY

This matter came before the Court on Petitioner Commonwealth Transportation Commissioner's Motion to Strike Respondent Ourisman Dodge, Inc.'s Affirmative Defense Number Four and on Ourisman Dodge, Inc.'s Motion for Summary Judgment. After Oral Argument on June 29, 2007, the Court took the matter under advisement.

*Facts*

In December 2002, the Commonwealth Transportation Commissioner acquired by eminent domain property owned by Ourisman Dodge, Inc. Ourisman acquired the property in 1985 and, since that time, has operated an automobile dealership on it.

The Commissioner set the value of the property taken at $2,600,000.00. A Disbursement Order was entered to that effect, thus ending the taking action. The present case is to determine just compensation.

Further examination of Ourisman's chain of title caused the Commissioner to doubt Ourisman's ownership of the property. The Commissioner amended his Petition to assert that Ourisman did not own the condemned property and that the $2.6 million paid must be returned.

Ourisman acquired the property in 1985 from the Chrysler Realty Corporation and asserts that its title can be traced to grants from the Commonwealth. The Commissioner responds that two of the Commonwealth grants to Ourisman's predecessors in title are invalid to pass title.

The first of these grants purportedly conveyed approximately 18 acres of land to George Ford in 1951 ("Ford Grant"). Ourisman contends that the Ford Grant was issued after Ford submitted a survey of the property and an affidavit certifying that the land either was not previously appropriated or that Ford had a *bona fide* claim to the land. The State Librarian's May 1, 1951, transmittal letter informing Governor Battle of the Ford Grant recites:

> I, Randolph W. Church, State Librarian, do hereby certify that, in conformity with a survey made on the eighteenth day of April, one thousand nine hundred and fifty, by virtue of Land Office Treasury Warrant No. 22603 issued to George A. Ford, and in conformity with the certificate and plat of survey executed in the aforesaid, the attached land grant has been prepared pursuant to Code Section 41-5.

The State Librarian was the issuer of grants for the Commonwealth at that time.

The second grant disputed by the Commissioner purportedly conveyed approximately 7.99 acres of land from the Commonwealth to Catherine Pullman in 1962 ("Pullman Grant"). The deed for the Pullman Grant reads: "This grant is made pursuant to the provisions of Section 41-8 of the Code of Virginia of 1950 upon the petition and affidavit of the grantees and a survey. . . ." Although the Pullman Grant is not, strictly speaking, the subject of the competing motions, because of the underlying reasoning as to the Ford Grant applies to the Pullman Grant, it will be included in the analysis.

Regardless of the details of the grants, the heart of this matter is that, at the time of each grant, Great Hunting Creek (also known as Cameron Run) ran through some parts of both properties. The land formerly under Great Hunting Creek apparently now constitutes the bulk of Ourisman's property. The creek was later diverted, in 1962, for construction of the Capital Beltway.

The Commonwealth argues that the grants issued could not include any property which was under Great Hunting Creek for two reasons. First, the Commonwealth, absent special legislation, cannot convey navigable waters or land "used as a common by all the people" of the Commonwealth. Va. Code § 62-1. Great Hunting Creek was navigable water and/or land used as a common.

Second, assuming that both the 1951 Ford Grant and the 1962 Pullman Grant were made pursuant to Va. Code § 41-8, that section specifically excepts from any grant land used as a common. If, as a result, the two grants are invalid as to such parts of those grants falling within that definition – here, allegedly the Ourisman property – the Commonwealth argues that it owes Ourisman no compensation because the Commonwealth could not divest itself of the property. Simply put, Ourisman could not receive from its predecessors in title that which those predecessors could not receive from the Commonwealth.

Ourisman argues that the Ford Grant was ratified by Virginia Code § 41-8.3 (now Va. Code § 41.1-6), the "Ratification Statute," which confirmed title to grantees receiving grants pursuant to former Virginia Code § 41-8. Though former § 41-8 is not mentioned in the State Librarian's transmittal letter for the Ford Grant, Ourisman argues that authority to issue that grant arose under former § 41-8, and that the State Librarian's reference to former § 41-5 is of no moment because § 41-5 is merely a procedural statute. Based on these facts, and the Ratification Statute, Ourisman moves for summary judgment because that grant was effectively issued pursuant to § 41-8.

The Commissioner replies that the Ratification Statute cannot be applied to the Ford Grant. The Commissioner argues further that, in any event, the Commonwealth could not grant navigable waters, which would include Great Hunting Creek, and also because, even if the Ford Grant was pursuant to § 41-8, that code section specifically prohibited grants of common land.

*Analysis*

Former Virginia Code § 41-8 contains the following limitation to the State Librarian's authority:

> [N]o grant issued by him, either in consequence of any survey already made, or which may hereafter be made, shall be valid or effectual in law . . . to pass any estate or interest in any lands *which are a common* under § 62-1. . . .

*Id.* (emphasis added).

Former Virginia Code § 62-1 provides:

> *All the beds of* the bays, rivers, *creeks,* and the shores of the sea within the jurisdiction of this Commonwealth, and not conveyed by special grant or compact according to law, *shall* continue and

*remain the property of the Commonwealth* of Virginia, *and may be used as a common* by all the people of the State for the purpose of fishing and fowling, and of taking and catching oysters and other shellfish. . . .

Va. Code § 62-1 (1950) (emphasis added).

Va. Code § 41-8.3, approved as emergency legislation in 1966, provides that "Any grants for land heretofore issued by the State Librarian pursuant to § 41-8 are hereby ratified and confirmed and title is confirmed in the grantees thereof." Virginia Code § 41-8.3 (1966).

The rules of statutory construction are clear. Virginia adheres to the maxim *expressio unius est exclusio alterius*, providing that, when a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute. *Commonwealth, ex rel. Virginia Dep't of Corrections v. Brown*, 259 Va. 697, 704-05, 529 S.E.2d 96, 100 (2000). That maxim is dispositive of the issues presented.

First, Virginia Code § 41-8.3 provides only for ratification of grants issued pursuant to former § 41-8. Had the General Assembly intended to provide for ratification of grants issued under former § 41-5, former § 41-19, or any other section, it could have stated as much. It did not do so, and the Court may not now do so.

Second, because former § 41-5 states that it allows for a grant "in the manner proscribed by law," it covers a potentially much broader range than does former § 41-8. Though Ourisman contends that, in the present matter, "the manner proscribed by law" must be former § 41-8 because Ford submitted a survey and affidavit, Ourisman cannot conclusively show that the survey and affidavit were not submitted for reasons other than those confirmed in the State Librarian's transmittal letter.

Third, and more dispositively, *even if* the Ford Grant was issued pursuant to former § 41-8, Ourisman's contention that the grant was ratified by § 41-8.3 still fails. Though a ratification statute may cure certain defects in a grant, it cannot, without an express provision to the contrary, provide for more authority than that permitted under the original statute. Here, § 41-8 specifically forbade the conveyance of land protected under former § 62-1. Section § 62-1 protects bays, rivers, and creeks. Great Hunting Creek unquestionably falls under this classification. That Great Hunting Creek was subsequently diverted is of no consequence, as long as it ran through parts of the property in question when the grants were issued, as it apparently did. The

State Librarian could not by grant convey Great Hunting Creek in 1951 or in 1962, and the Ratification Statute cannot in 1966 bestow upon the State Librarian more authority than originally provided.

## Conclusion

For these reasons, the Commissioner's Motion to Strike Ourisman's Affirmative Defense Number Four is hereby granted and Ourisman's Motion for Summary Judgment is hereby denied.